IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robert W. Bethel,                    :

      Plaintiff,              :

      v.                      :    Case No. 2:15-cv-3016

Charlotte A. Jenkins, et al.    :    JUDGE ALGENON L. MARBLEY
                                     Magistrate Judge Kemp
      Defendants.             :

<u>REPORT AND RECOMMENDATION</u>

    Plaintiff Robert Bethel, an inmate at the Chillicothe
Correctional Institution ("CCI"), filed this action pursuant to
42 U.S.C. §1983 alleging violations of his constitutional rights.
Defendants Charlotte Jenkins and Michael Eiring have filed
motions for judgment on the pleadings (Doc. 12) and to stay
discovery (Doc. 17), which are now ripe for consideration.  For
the reasons set out below, it will be recommended that the motion
for judgment on the pleadings be granted and the motion to stay
discovery be denied as moot.

I. <u>Background</u>

    Mr. Bethel is a death row inmate incarcerated at CCI.  Ms.
Jenkins is the Warden and Mr. Eiring, at all relevant times, was
the Mail Room Supervisor of CCI.  In February, 2015, Mr. Eiring
implemented a new policy (the "Policy") which prohibits inmates
from receiving any personal property, including printed
materials, which are not ordered through the inmate's
institutional account.  There is an exception to this prohibition
in that inmates are permitted to obtain prior permission for
third parties to send printed materials ordered from approved
vendors.  Mr. Bethel was made aware of this policy.  (Doc. 1 at
47).  The Policy was approved by Ms. Jenkins.  <u>Id</u>. at ¶4.  Mr.
Bethel alleges that it is rarely possible for him to place orders

for printed materials through his account because he uses funds provided by his mother to his inmate account primarily for the purchase of food and hygiene products. Thus, he claims that he has only on rare occasions been able to purchase printed materials via his inmate account. Mr. Bethel made requests to various other people outside of the prison to deposit funds into his inmate account. However, while they were unwilling to provide funds directly to his inmate account, they offered to order materials themselves from book vendors to be delivered to Mr. Bethel. Id. at ¶¶ 18-22.

In March, 2015, Mr. Bethel filed a grievance challenging the Policy and asking that inmates be permitted to receive materials ordered by third parties directly from approved book vendors without prior permission. The grievance was denied, as well as all available appeals. Between March and June, 2015, four books were withheld from Mr. Bethel, and he was told by Mr. Eiring and other mail room staff that the books would need to be either mailed out of the prison or destroyed. They also informed him that the books had not been withheld from him due to their content or security concerns, but simply because they were ordered by a third party without pre-approval in violation of the prison's Policy. Id. ¶¶23-29, 35. Mr. Eiring informed Mr. Bethel that he had no right to appeal the withholding of these books. Mr. Bethel grieved that decision as well, but the grievance and all related appeals were denied. Id. ¶¶59-70. Mr. Bethel attempted to use CCI's library, but he claims that the printed materials he was seeking were not available. He also requested more than 200 printed materials through CCI's Inter-Library Loan ("ILL") program, but says that he was unable to obtain any of the materials he requested. Id. ¶¶32-35.

On or about May 21, 2015, Mr. Bethel learned from the CCI Chaplain that the mail room routinely forwarded the Chaplain

2

printed religious materials that had been withheld per the Policy, and that the Chaplain provided the materials to inmates at his discretion. After clarifying with Mr. Eiring that this was inconsistent with the Policy, Mr. Bethel filed a grievance pointing out inconsistent application of the Policy and requesting that the Policy no longer be implemented. In his disposition of grievance, the Institutional Inspector confirmed that there was a "short period where books were being forwarded to religious services to be screened," but that prison staff had now been instructed to consistently apply the Policy to all printed materials. Id. ¶¶36-49.

Mr. Bethel later discovered through conversations with other inmates that the practice of allowing religious books received in violation of the Policy to be screened by the Chaplain continued to occur. At least two other inmates had received Christian and Islamic religious books via the Chaplain even though they were not received in accordance with the Policy. These inmates stated that the Chaplain informed them that he was arranging for "lots of guys" to receive religious materials. (Doc. 1, Ex. 1 and 2). Mr. Eiring and other mail room staff were aware of this. At one point, Mr. Eiring contacted Mr. Bethel specifically and informed him that he could have such religious materials screened and supplied to him at the Chaplain's discretion. However, Mr. Bethel did not attempt to have any religious materials screened because he claims that Mr. Eiring did not tell him how to do so. (Doc. 1 at 28, ¶¶155-159). This lawsuit followed.

Mr. Bethel is suing Ms. Jenkins in her official and individual capacities and Mr. Eiring in his individual capacity for violating his rights under the First and Fourteenth Amendments to the Constitution. He seeks an injunction ordering the Policy to be either changed or consistently applied,

compensatory damages for his expenses and emotional distress, and
punitive damages.

## II. Legal Standard

A motion for judgment on the pleadings filed under
Fed.R.Civ.P. 12(c) attacks the sufficiency of the pleadings and
is evaluated under the same standard as a motion to dismiss.
Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir.
1979). In ruling upon such motion, the Court must accept as true
all well-pleaded material allegations of the pleadings of the
opposing party, and the motion may be granted only if the moving
party is nevertheless clearly entitled to judgment. Southern
Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479
F.2d 478, 480 (6th Cir. 1973). The same rules which apply to
judging the sufficiency of the pleadings apply to a Rule 12(c)
motion as to a motion filed under Rule 12(b)(6); that is, the
Court must separate factual allegations from legal conclusions,
and may consider as true only those factual allegations which
meet a threshold test for plausibility. See, e.g., Tucker v.
Middleburg-Legacy Place, 539 F.3d 545 (6th Cir. 2008), citing,
inter alia, Bell Atlantic Corp. v. Twombly 550 U.S. 544 (2007).
It is with these standards in mind that the motion for judgment
on the pleadings must be decided.

## III. Discussion

While prisoners retain certain constitutional rights, they
must be balanced against legitimate penological interests of
prison. Bell v. Wolfish, 441 U.S. 520, 544-52 (1979). The factors
to be considered were provided by the Supreme Court in Turner v.
Safley 482 U.S. 78 (1987): (1) whether there is a "valid,
rational connection" between the prison regulation and the
legitimate governmental interest put forward to justify it; (2)
whether there are alternative means of exercising the right that
remain open to prison inmates; and (3) whether accommodating the

4

asserted constitutional right will have an adverse impact on
guards and other inmates, and on the allocation of prison
resources generally; and (4) whether there are ready alternatives
to the policy in question. Id. at 89-90.

Mr. Bethel alleges that his First and Fourteenth Amendment
rights were violated by the Defendants' actions because he was
unable to receive a number of printed materials, and because the
Policy was inconsistently applied.  Defendants argue, for a
number of reasons, that Mr. Bethel's complaint fails to state a
valid constitutional claim.

A.  <u>First Amendment Free Speech</u>

Although there is no explicit mention in the First Amendment
of the right to receive information, it has been held that the
right to receive published information and ideas is
constitutionally protected.  See, e.g., <u>Pell v. Procunier</u>, 417
U.S. 817 (1974).  Mr. Bethel alleges that the Policy which he
challenges prevents him from receiving certain printed
publications and he was required to pay money to mail the
withheld items out of the prison.  For the purposes of analyzing
the current motion, the Court accepts Mr. Bethel's statements
that this Policy prevented him from receiving certain written
materials which did not contain any objectionable content.

With respect to the first <u>Turner</u> factor, the Defendants
maintain that the Policy banning gift publications furthers a
"cost-effective protection against contraband." (Doc. 12 at 8).
The Tenth Circuit Court of Appeals considered a constitutional
challenge to a similar prison policy in <u>Wardell v. Duncan</u>, 470
F.3d 954 (10th Cir. 2006), finding that the rational connection
between the policy and a legitimate government interest was
alleviating security issues posed by gift purchases.  The <u>Wardell</u>
court agreed with the defendants' position that the prison policy
was in place in order to:

5

> "prevent unauthorized bartering, extortion,
> contraband smuggling, and other prohibited
> and/or criminal activity inside the prison
> facilitated through the assistance or
> exploitation , such as unauthorized
> bartering, extortion, contraband smuggling,
> and other prohibited and/or criminal activity
> inside the prison; to prevent inmates from
> conspiring to manipulate and defraud members
> of the public; and to prevent the
> unauthorized practice of law by 'jailhouse
> lawyers' selling legal services to other
> inmates and the public."

Id. at 960.  The court also noted the "wide ranging deference" that must be given to prison officials' adoption of policies and practices that in their judgment are needed to preserve internal order and maintain institutional security.  Id, citing Bell v. Wolfish, supra, at 521.

As to the second Turner factor, there are alternative ways for Mr. Bethel to obtain printed materials, none of which are unduly burdensome.  In addition to ordering printed materials directly from their account, inmates may seek advance permission for a third party to send  materials directly from approved vendors.  Inmates also may borrow publications from the library and ILL services.  Although Mr. Bethel complains that he "rarely" is able to order printed items through his inmate account because he must use the money for personal hygiene products, how Mr. Bethel chooses to spend the funds in his inmate account remains his decision.  Further, Mr. Bethel does not allege that he attempted to obtain pre-approval for a third party to send him the withheld materials or order them from his inmate account rather than spending the funds on other things.  These alternative avenues were available to him at all relevant times and are apparently still available.

As to the impact of changing the policy, the Defendants argue that changing the policy in the way Mr. Bethel is seeking

6

would increase the risk of contraband coming into the prison and
cause the expense of additional screening.  Mr. Bethel does not
suggest an alternative available to Defendants other than to
change the Policy to allow third party purchases without pre-
approval. Balancing these factors against the alleged harm
suffered by Mr. Bethel, he fails to state a claim for violation
of his free speech rights.  He was never prohibited from
receiving any materials based on content, but was only required
to follow the Policy and use the prison's approved methods of
obtaining printed materials, which, under Turner, pass
constitutional muster.

     B. First Amendment - Establishment Clause

  Mr. Bethel's claim that Mr. Eiring did not follow the Policy
consistently because he allowed Religious Services at the prison
to screen and supply to certain inmates non pre-approved
religious materials ordered by third parties is, he suggests, a
violation of the Establishment Clause because, by making such an
exception, Mr. Eiring preferred religious materials over secular
materials.  The Defendants argue that the actions of Mr. Eiring
did not directly affect Mr. Bethel.  They also assert that the
practice was stopped, although there is evidence in the record to
the contrary, namely the affidavits of two inmates who state they
were able to receive non pre-approved religious materials via the
prison Chaplain after the prison had supposedly ceased this
practice.  Mr. Bethel admits in the pleadings that he was told by
Mr. Eiring that he, too, could have religious materials screened
and provided to him at the Chaplain's discretion, but says he
never chose to do this because he did not know how.  It is worth
noting that the affidavits provided by Mr. Bethel reflect that
one of the other inmates received Christian materials and one
received Islamic materials.  There is no allegation by Mr. Bethel
that prison officials preferred one religion over another, only

7

that exceptions were made to the Policy for religious materials but not secular materials.

It is well established that an accommodation of religious practices in prisons is not an affront to the Establishment Clause.  A government's religious accommodations need not "come packaged with benefits to secular entities or interests." Cutter v. Wilkinson, 544 U.S. 709, 710 (2005), quoting Corp. of Presiding Bishop of Church of Latter-day Saints v. Amos, 483 U.S. 327 (1987).  The Supreme Court has held that prisons may allow chaplains and religious services without Establishment Clause concerns.  Id.  "There is room for play in the joints productive of a benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." Waiz v. Tax Commission of City of New York, 397 U.S. 664, 669 (1970). Each value judgment under the Establishment Clause turns on whether particular acts in question are intended or have the effect of establishing or interfering with religious beliefs and practices.  Id.

As noted above, courts accord prison officials "wide discretion in adopting and applying policies and procedures necessary to preserve safety, order, and discipline within corrections facilities." Hayes v. Tennessee, 424 Fed.Appx. 546, 553 (6th Cir. June 1, 2011).  The Supreme Court has acknowledged that the broad discretion of prison officials in applying policies and regulations, even when rationally related to legitimate security interests, may produce inconsistent results within prisons over time.  Id., citing Thornburgh v. Abbott, 490 U.S. 401 (1989).  To succeed on a claim of unconstitutional application of prison regulations, the plaintiff bears a "heavy burden" of overcoming the presumption that prison officials acted within their broad discretion.  Id.

Mr. Bethel admits that he was told directly by Mr. Eiring that he could have religious books screened and provided to him at the Chaplain's discretion.  Having religious printed materials reviewed by Religious Services or other prison officials strikes an effective balance between the religious rights of the prisoners and legitimate security concerns.  See, e.g. Cutter, supra.  Mr. Bethel correctly states that the practice of allowing religious materials to be screened by the Chaplain without pre-approval is inconsistent with the Policy, but he has alleged no facts to suggest that this exception, when it occurred, did not still serve the prison's security concerns, or that the more general application of the Policy was not still rationally related to legitimate security concerns.  In the Court's view, this is not enough to demonstrate an Establishment Clause violation.

## VI. Equal Protection

Mr. Bethel contends that Mr. Eiring violated his Fourteenth Amendment right to equal protection by allowing gift publications to be provided to other prisoners in contravention of the Policy, but not providing  him the same opportunity. "Fundamentally, the [Equal Protection] Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights.  The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." Scarbrough v. Morgan County Bd. Of Educ. 470 F.3d 250, 259 (6th Cir. 2006).  Mr. Bethel contends he is a "class of one" for Equal Protection purposes.  See id. (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564).  However, "prisoners are not considered a suspect class for purposes of equal protection litigation." Jackson v. Jamorg, 411 F.3d 615,

619 (6th Cir. 2005).  In order for actions of prison officials to rise to the level of a violation of the Equal Protection Clause, a prisoner must show that he or she was treated differently than similarly situated prisoners and that there was no rational basis for the difference in treatment. Olech, supra.

The Court accepts for the purposes of this analysis that prison officials, including Mr. Eiring, allowed the Policy to be applied inconsistently.  Mr. Bethel was similarly situated to the other prisoners in this case.  However, Mr. Bethel has not shown any discriminatory intent on the part of the Defendants, and he admits that he was told by Mr. Eiring that he could have religious gift materials be screened by the Chaplain as well. The basis of Mr. Eiring's inconsistent application of the Policy for religious materials appears to be his effort to accommodate the religious practices of prisoners while ensuring security concerns were addressed.  That is a sufficiently rational explanation to not detect any Equal Protection concerns.

## V.  Recommended Disposition

For all of these reasons, it is recommended that the Defendants' motion on the pleadings (Doc. 12) be granted and the motion to stay discovery (Doc. 17) be denied as moot.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein,

10

may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge

11