**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT E. BETHEL,** | : | |
| | : | Case No. 2:15-CV-3016 |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | Magistrate Judge Kemp |
| **CHARLOTTE A. JENKINS,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before the Court for consideration of Plaintiff's Objections to the Magistrate Judge's June 23, 2016 Report and Recommendation (Doc. 23), which recommended that this Court grant Defendants' Motion for Judgment on the Pleadings. (Doc. 12.) After an independent review, for the reasons set forth below, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** and **AFFIRMS** the Report and Recommendation.

**I.  BACKGROUND**

Plaintiff Robert Bethel, a *pro se* litigant, is a death row inmate currently incarcerated at Chillicothe Correctional Institution ("CCI"). (Compl., Doc. 1 at 1.) Defendant Jenkins is CCI's Warden and Defendant Eiring, at all relevant times, was CCI's Mail Room Supervisor. (*Id.* at 2-3.) In February 2015, Eiring and Jenkins instituted a policy ("the policy" or "the regulation") prohibiting inmates from receiving printed materials if the materials are not purchased through an inmate's institutional account from one of CCI's approved publishers or with the prior approval of prison staff. (*Id.* at 3-4, 47.) On November 19, 2015, Plaintiff filed this action for injunctive relief, as well as damages pursuant to 42 U.S.C. § 1983. (*Id.* at 1; 30-35.) Because the policy precludes his friends and family from sending him printed materials as gifts, even if sent

directly from a publisher, Plaintiff argues that the policy has prevented him from obtaining desired reading material because he does not have enough money to buy books that cannot be found in the prison library. (*Id.* at 3-5; 7.) While the policy purportedly prevents all categories of gifted books from entering the prison, Plaintiff also alleges that Defendant Eiring allowed, at least for several months, an exception for religious books. (*Id*. at 7-8.) Instead of being returned or destroyed, as the policy dictates, the religious works were forwarded to the prison chaplain for a final determination on whether the book posed a security threat. (*Id.* at 8.) The Institutional Inspector assigned to evaluate Plaintiff's grievances confirmed that for at least a "short period of time . . . books were being forwarded to religious services to be screened," but that prison staff had since then been instructed to apply the policy to all printed materials consistently. (*Id.* at 9-10.) Even after that mandate, Plaintiff alleges that CCI continues to allow this exception for religious material. (*Id.* at 10-11.)

Plaintiff sued Jenkins in her official capacity, and Jenkins and Eiring in their individual capacities, for violating his rights pursuant to the First and Fourteenth Amendments to the United States Constitution, contending that the policy violates the Establishment Clause of the First Amendment, his right to freedom of speech under the First Amendment, and his Fourteenth Amendment equal protection and procedural due process rights. (Doc. 1 at 2-4, 11, 13.) On June 13, 2016, the Magistrate Judge recommended that Plaintiff's complaint be dismissed in its entirety. (Doc. 23.) Plaintiff objected to the Report and Recommendation. (Doc. 24.)

## II. STANDARD OF REVIEW

Upon objection from a Magistrate Judge's recommended disposition, this Court is required to "make a *de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).

The Court considers a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, Plaintiff's complaint must contain factual allegations rather than mere labels and conclusory statements. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering such a motion, the Court accepts "all well-pleaded factual allegations of the complaint as true." *Reily v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (internal citations omitted). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 570). A claim is considered plausible if the court can "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

#### A. Freedom of Speech

Plaintiff first objects that the Magistrate Judge misapplied the *Turner* factors in evaluating his First Amendment freedom-of-speech claim because the state's asserted legitimate interests were overly vague. (Doc. 24 at 11).

It is a well-established principle that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner*, 482 U.S. at 84. The First Amendment protects inmates' "right to receive information and ideas." *Bell v. Wolfish*, 441 U.S. 520, 572-73 (1979). But while inmates are not automatically stripped of the constitutional

3

safeguards provided to every citizen, lawful incarceration necessitates restrictions of many recognized privileges and rights, which are justified in light of the realities of our penal system. *Beard v. Banks*, 548 U.S. 521, 528-29 (2006).  In assessing whether the restrictions on independent liberties are appropriate, the Court accords "substantial deference to the professional judgment of prison administrators." *Overton v. Bazzeta*, 539 U.S. 126, 132 (2003).  Prison officials are better positioned to make decisions about prison administration than a "judiciary [that] is 'ill equipped' to deal with the difficult and delicate problems of prison management." *Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989) *(*quoting *Procunier v. Martinez*, 416 U.S 396, 404-05 (1974)).

The Supreme Court identified four factors in *Turner* that are "relevant in determining the reasonableness of the regulation at issue," including (1) whether there is a valid rational connection between the prison regulation and the legitimate governmental interest; (2) whether the inmate has alternative means of exercising the right; (3) the impact that the accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives to the prison regulation.  482 U.S. at 89-91.  As a general rule, the "failure to satisfy the first factor renders the regulation unconstitutional without regard to the remaining three factors." *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (citing *Turner*, 482 U.S. at 89-91).  If there is a rational connection, "the first factor is satisfied [and] the remaining factors are considered and balanced together as guidelines by which the court can assess whether the challenged actions are reasonably related to a legitimate penological interest." *Id.*

The first *Turner* factor requires courts to determine whether the government's proffered interest is: (1) legitimate and neutral; and (2) rationally related to that legitimate objective.  482

4

U.S. at 89-90.  The relationship between the stated interest and the regulation must not be so attenuated as to render the policy arbitrary or irrational.  *Id*.

Defendants assert that the gift publication regulation was enacted to "cost-effectively eliminate the risk that a third party could repackage books in an attempt to hide contraband." (Doc. 16 at 1-2.)  Security and cost savings are legitimate penological interests.  Because the smuggling of contraband into prison is a pervasive problem, and because it is costly and cumbersome for prison staff to conduct intensive screening of everything that enters the prison, maintaining a list of pre-approved publishers from whom inmates must purchase books directly is rationally related to the government's security and budgetary interests.  *See Wardell v. Duncan*, 470 F.3d 954, 960 (10th Cir. 2006) (holding that there was a rational connection between a gift publication ban and the legitimate government interest in security).  *See also Bell v. Wolfish*, 441 U.S 520, 548-50 (1979) (finding that the prohibition on hardcover books that did not come from a publisher was rationally related to the government's objective of maintaining security in prisons); *Ward v. Washtenaw County Sheriff's Dep't*, 881 F.2d 325, 329-30 (6th Cir. 1989) (extending the *Bell* holding to other types of printed materials due to the legitimate safety concerns in prison).

The remaining three *Turner* factors also support a finding that the policy is constitutional. Plaintiff still has the ability to use the funds in his account to purchase reading material, convince his family to deposit additional funds in his account, or check books out of the prison library. Even if, as he alleges in his proposed amended complaint, he attempted to seek advance permission to receive gift publications from non-approved publishers and his requests were denied, these other avenues remain available to him.  Moreover, due to security and budgetary concerns in prisons, an accommodation to allow gift publications from non-approved publishers

5

into the prison could very well lead to increased security and screening costs.  And Plaintiff does not suggest a ready alternative to the policy other than to rescind it and allow all reading material to be sent to the prison, which could lead to security and cost concerns.  Defendants' motion to dismiss Plaintiff's freedom-of-speech claim is granted.

### B.  Establishment Clause

Plaintiff's Establishment Clause claim arises from the alleged inconsistent application of the policy depending on whether the gifted publication was of a religious nature.  (Doc. 1 at 19-22.)  Instead of being immediately returned or destroyed as non-religious books were, Plaintiff contends that religious books were transferred to the prison chaplain for an individual security screening to determine if the book should be allowed to enter the prison.  (*Id*. at 19.)  Plaintiff claims that the additional security screening and subsequent allowance of religious third-party gifts violates the Establishment Clause because religious books were granted preference over non-religious ones.  (*Id*. at 26.)  But while the policy was applied differently for religious than non-religious books, the factual allegations of the complaint do not support a conclusion that the predominant purpose of the regulation was to promote religion or that the application of the policy reflected an endorsement of religion.

The two Religion Clauses of the First Amendment provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  Although "these two Clauses express complementary values, they often exert conflicting pressures." *Id*.  If the government allows for an increase in the exercise of religion, the government may appear to be promoting religion, and vice versa. *Id*.  Nevertheless, there is "some space for legislative action neither compelled by the Free Exercise Clause, nor prohibited by the Establishment Clause." *Id.*  While simple in concept, courts have

6

often struggled to define this "safe" zone. *See, e.g.*, *Walz v. Tax Comm'n of New York,* 397 U.S. 664, 668-69 (1970) ("The Court has struggled to find a neutral course between the two Religion Clauses, both of which are cast in absolute terms, and either of which, if expanded to a logical extreme, would tend to clash with the other.").

The touchstone of the Establishment Clause is that the "government [possess] neutrality between religion and religion, and between religion and non-religion." *McCreary County v. Am. Civil Liberties Union*, 545 U.S. 844, 860 (2005) (internal quotations omitted). To pass muster under the Establishment Clause: (1) a statute or regulation "must have a secular legislative purpose"; (2) "its principal or primary effect must be one that neither advances nor inhibits religion"; and (3) it "must not foster an excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971) (internal quotations omitted).

The first prong, or the purpose test, is an objective test.[1] *McCreary County,* 545 U.S. at 862. The test "takes into account traditional external signs that show up in the text, legislative history, and implementation of the statute, or comparable official act…to determine if the predominant purpose [of the policy] is to advance religion." *Am. Civil Liberties Union v. McCreary*, 607 F.3d 439, 445-46 (6th Cir. 2010) (quoting *McCreary County*, 545 U.S. at 860); *see also Am. Civil Liberties Union v. DeWeese*, 633 F.3d 424, 431 (6th Cir. 2011) ("*Lemons*' purpose prong is now the predominant purpose test."). From an objective standpoint, the current

---

[1] Plaintiff cites *Smith v. Jefferson County Bd. of School Commissioners*, 788 F.3d 580, 587 (6th Cir. 2015), which cites Justice O'Connor's concurrence from *Lynch v. Donnelly*, 465 U.S. 668, 690 (1984), for the proposition that the first test is subjective. However, while *Smith* is a recent Sixth Circuit case, the Supreme Court has squarely held since *Lynch*, in *McCreary County*, that the first prong is objective. *McCreary County*, 545 U.S. at 862; *see also Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000).

7

regulation was written for the purposes of security and cost cutting measures. The policy does not mention religion or expressly allow a religious exception.

While clearly secular on its face, there was a religious exception in the enforcement of CCI's policy. The inconsistent application of the policy does not necessarily dictate a finding that the predominant purpose of this policy was to advance religion, however. Both the Supreme Court and the Sixth Circuit make it clear that "under the *Lemon* purpose inquiry, courts have consistently found the history and context of the action significant. 'The [purpose] inquiry [] turns upon the context in which the contested object appears.'" *DeWeese*, 633 F.3d at 432 (quoting *McCreary County,* 545 U.S. at 868). In the prison context, prison officials are entitled to deference. *See Thornburgh*, 490 U.S. at 408. Here, given that preventing the religious books from entering the prison could lead to suits for free-exercise violations, the policy is rationally related to the legitimate penological interest of controlling costs. *See Cutter*, 544 U.S. at 719.

The second prong, the endorsement test, asks, "whether the government action has the purpose or effect of endorsing religion." *Am. Civil Liberties Union v. Mercer*, 432 F.3d 624, 635 (6th Cir. 2005). The endorsement test is also objective. *Id.* at 636. The underlying inquiry is whether a reasonable person would see the government's actions as an endorsement of religion. *Id.* A violation is not limited to endorsing one religion over another; a violation also occurs when religion is endorsed over non-religion. *McCreary County*, 545 U.S. at 860.

From an objective standpoint, the Court finds that the purpose and effect of the policy was to allow for the free exercise of religion. Plaintiff has not met his "heavy burden" of overcoming the presumption that prison officials acted within their broad discretion, even

8

acknowledging that those officials' discretion may sometimes produce inconsistent results. *Hayes v. Tennessee*, 424 F. App'x 546, 553 (6th Cir. 2011).

The third prong, the excessive entanglement test, focuses primarily on the state's relationship with religious institutions. *Agostini v. Felton*, 521 U.S. 203, 232 (1997). This case does not concern the entanglement of the prison and a religious institution and, therefore, Plaintiff cannot show excessive entanglement. Plaintiff's Establishment Clause claim must be dismissed for failure to state a claim upon which relief may be granted.

### C. Equal Protection

In his equal protection class-of-one claim, Plaintiff argues that he was singled out and treated differently because the books he sought were not religious. (Doc. 1 at 28-29.) While equal-protection claims traditionally focus on disparate treatment among similarly situated groups, the Supreme Court has held that a plaintiff may bring a class-of-one equal-protection claim without alleging "membership in a class or group" by alleging instead "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Villagebrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Davis v. Prison Health Systems*, 679 F.3d 433, 441 (6th Cir. 2012) ("[A]ll class-of-one claims are subject to rational basis review."). In order to prevail, the Plaintiff must show that the "government action lacks a rational basis . . . either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will." *Scarborough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006) (citation omitted).

Plaintiff is unable to show that the policy was instituted or enforced because of ill will toward him or that there was no rational basis for the difference in treatment. First, he

9

acknowledges that the chaplain told him he could have religious materials screened by the chaplain.  Nor are there any other allegations that Defendants harbored any animus toward Plaintiff.  Second, Eiring could have implemented the exemption to prevent a restriction of other prisoners' right to free exercise, which is a sufficiently rational explanation to defeat Plaintiff's claim.  *See FCC v. Beach Communications*, 508 U.S. 307, 313 (1993) ("[A] classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'").  Accordingly, Plaintiff's equal-protection claim must be dismissed.

### D.  Procedural Due Process

Finally, Plaintiff argues that the prison violated his procedural due process rights by not allowing him to appeal the rejection of his gift publications.  (Doc. 1 at 25-26.)  Plaintiff contends that he was unable to appeal, or in some cases was not even given notice that his books had been seized by administrators.  Plaintiff claims that when a book was seized, his only options were to pay for the book to be shipped somewhere else, or to allow it to be destroyed.  (*Id.*)  Although, as Plaintiff points out, the Magistrate Judge did not address this claim, this Court, after independent review, finds that it must be dismissed.

The complaint is not entirely clear as to whether the Plaintiff was prohibited from appealing or whether his appeal was dismissed, since he filed numerous grievances regarding his seized books.  (*Id.* at 45-94.)  In viewing plausible factual allegations as true, the Court will analyze the claim as his appeal was precluded.

Courts use the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to evaluate whether particular procedures provide due process.  Three factors must be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable

>value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 335.  First, because he is a prisoner, and "[p]risoners held in lawful confinement have their liberty curtailed by definition, . . . the procedural protections to which [Plaintiff is] entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *See Wilkinson v. Austin*, 545 U.S. 209, 225 (2005).  In *Austin*, the Supreme Court characterized an inmate's interest in avoiding assignment to a restrictive "Supermax" prison as limited, although "more than minimal." *Id.*  The Court finds that Plaintiff's interest in obtaining books from third parties without pre-screening can appropriately be characterized, where a serious curtailment of liberty is not at stake, as minimal.  Second, the Court finds that any risk of erroneous deprivation of his liberty interest is minimal because Plaintiff could avail himself of the pre-screening procedure, which he claims not to have done merely because he did not know how to do so, and because, as detailed above, there were other available avenues for Plaintiff to receive printed material.  (Doc. 1 at 28.)  Finally, in the prison-management context, the government's interest "is a dominant consideration." *Id.* at 227.  A balancing of the *Mathews* factors demonstrates that the prison's policy is adequate to safeguard Plaintiff's right to receive books. Plaintiff's due process claim must be dismissed.

### E.  Plaintiff's Motion for Leave to Amend His Complaint

On August 15, 2016, after the Magistrate Judge had issued his Report and Recommendation, Plaintiff filed a Motion for Leave to Amend the Complaint.  (Doc. 28.)  A plaintiff may amend his complaint as a matter of course within 21 days after serving a complaint or within 21 days of being served with a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  Otherwise, a party may amend with leave

of the Court, which "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Forman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave should be freely given absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment"). A court may deny a motion for leave to amend for futility if "the pleading as amended could not withstand a motion to dismiss." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (citation omitted).

Plaintiff's proposed Amended Complaint does not cure the deficiencies in his original Complaint. The Amended Complaint states, in relevant part, that: (1) Plaintiff has limited funds in his prison account for all purchases, including printed material; (2) that his mother deposits funds in his account on the condition that they be used only for food and hygiene products; and (3) that he requested pre-approval for an exemption to the gift publication ban from Defendant Jenkins on several occasions and his requests were all denied. (Doc. 28 at 5-7.) Despite Plaintiff's limited funds, he ultimately has discretion over how he spends those funds and he is able, if he so chooses, to use them to purchase books from pre-approved publishers. Moreover, as discussed in Section III(A), *supra*, even accepting as true that Plaintiff requested pre-approval for exemptions several times and the requests were denied, he still has other avenues available to him for purchasing reading material.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**. The Court **ADOPTS** and **AFFIRMS** the Report and Recommendation. (Doc. 23.) The Motion to Stay Discovery pending the resolution of Defendants' motion for judgment on the pleadings is **DENIED as MOOT**. (Doc. 17.) Further,

Plaintiff's Motion to Amend or Vacate Judgment, Motion for Relief from Judgment, and Motion Verifying Plaintiff's Rule 59 and 60 Motions are Timely Filed and 60(b)(3) Claim is Verified are **DENIED** as procedurally improper because the Court has not yet entered Judgment.[2]  (Docs. 26, 27, 29.)  Finally, Plaintiff's Motion for Leave to Amend the Complaint is **DENIED**.  (Doc. 28.)  This case is **DISMISSED**.  The Clerk is directed to enter Judgment for Defendants.

       IT IS SO ORDERED.

                                           s/ Algenon L. Marbley
                                          **ALGENON L. MARBLEY**
                                          **UNITED STATES DISTRICT JUDGE**

**DATED: September 21, 2016**

---

[2] Plaintiff appears to have filed these three motions on the mistaken assumption that the Magistrate Judge's Report and Recommendation constitutes an entry of final judgment, which it does not.