**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ROBERT W. BETHEL,**

       **Plaintiff,**

                           **Civil Action 2:15-cv-3016**
    **v.**                       **Judge Algenon L. Marbley**
                           **Magistrate Judge Elizabeth P. Deavers**

**WARDEN CHARLOTTE**
**JENKINS,** *et al.***,**

       **Defendants.**

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff Robert Bethel, a state inmate who is proceeding without the assistance of

counsel, brings this action pursuant to 42 U.S.C. § 1983, alleging Defendants Warden Charlotte

Jenkins and Michael Allen Eiring violated his constitutional rights.  This matter is before the

Undersigned for consideration of multiple pending motions.  (ECF Nos. 42, 44, 46, 54, 56.)

**I.**

Plaintiff is a death row inmate incarcerated at the Chillicothe Correctional Institution

("CCI").  (Amended Complaint, ECF No. 39 at ¶ 5 ("Am. Compl.").).)[1]  At all times relevant to

this action, Defendant Jenkins was CCI's Warden and Defendant Eiring was CCI's mail room

supervisor.  (*Id*. at ¶¶ 6–7.)  In February, 2015, Defendant Eiring implemented a new policy (the

"Policy") that prohibited inmates from receiving any personal property, including printed

materials, which were not ordered through the inmate's institutional account.  (*Id*. at ¶ 10.)

Defendant Jenkins approved the Policy.  (*Id*.)

---

[1] The Amended Complaint is verified**.**  (ECF No. 39 at 14.)

According to Plaintiff, his only source of financial assistance is through his mother. (*Id*. at ¶ 11.) While she provides funds for the purchase of food and hygiene products, she will not provide funds to Plaintiff's institutional account for the purchase of printed materials. (*Id*. at ¶¶ 12, 14–15.) The Policy has prevented Plaintiff from receiving over 200 printed materials because he cannot purchase printed material from his institutional account due to lack of funds. (*Id*. at ¶¶ 12–17.) Specifically, during the period beginning April 13, 2015 through November 3, 2015, Plaintiff requested 201 titles of printed material from CCI's library and CCI's Inter-Library Loan ("ILL") program, but was unable to obtain any of these requested materials. (*Id*. at ¶¶ 21–22.)

In addition, on March 31, 2015, May 20, 2015, May 26, 2015, and June 17, 2015, four books were withheld from Plaintiff because they were ordered by a third party for delivery to Plaintiff instead of ordered through Plaintiff's institutional account. (*Id*. at ¶¶ 15–16.) Plaintiff received four contraband slips on these dates, advising that the four books were withheld in accordance with the Policy. (*Id*. at ¶ 27.) Plaintiff complained on each of these four occasions and Defendant Eiring and mailroom staff advised that the books were withheld because they were not ordered through Plaintiff's institutional account in accordance with the Policy. (*Id*. at ¶¶ 17–20, 29–30.) Defendant Eiring and mailroom staff also confirmed that being deemed a threat to prison security or not coming from a distributor were not the reasons the books were withheld. (*Id*. at ¶¶ 19–20, 30.) Plaintiff's appealed the decisions to withhold the books, but those appeals were denied. (*Id*. at ¶¶ 28–29, 33.)

On May 21, 2015, Plaintiff learned from CCI Chaplain Freeman that religious printed material ordered by third parties was permitted, in violation of the Policy. (*Id*. at ¶ 25.) On May 27, 2015, Defendant Eiring confirmed to Plaintiff that he permitted inmates to receive religious

publications ordered by third parties, in violation of the Policy.  (*Id*. at ¶ 26.)   Plaintiff later

learned in October and November 2015 that two inmates on separate occasions were ultimately

provided religious books that were initially withheld in accordance with the Policy.  (*Id*. at ¶¶

23–24.)  On the occasion in October 2015, the institutional religious services provided those

books in violation of the Policy.  (*Id*. at ¶ 23.)  On the other occasion in November 2015,

Defendant Eiring personally intervened and the other inmate ultimately received the religious

books in violation of the Policy.  (*Id*. at ¶ 24.)

During the period June 22, 2016, through July 19, 2016, Plaintiff submitted numerous

requests to obtain pre-approval exemption from the Policy in order to receive printed materials

from third parties.  (*Id*. at ¶ 31.)  However, all of these requests for pre-approval were denied.

(*Id*. at ¶ 32.)  Plaintiff alleges that he has exhausted his administrative remedies as to all claims

and Defendants.  (*Id*. at ¶ 33.)

Plaintiff filed this action on November 19, 2015, alleging that Defendants' actions

violated his rights under the First and Fourteenth Amendments to the United States Constitution

because he was unable to receive a number of printed materials and because the Policy was

inconsistently applied.  (ECF No 1.)  On September 21, 2015, this Court granted Defendants'

motion for judgment on the pleadings and dismissed Plaintiff's claims.  (ECF Nos. 31, 32.)

Plaintiff timely appealed.  (ECF No. 33.)  The United States Court of Appeals for the Sixth

Circuit concluded that Plaintiff's Establishment Clause was properly dismissed and that Plaintiff

waived his equal protection claim, but found that Plaintiff sufficiently stated free speech and

procedural due process claims and remanded for further proceedings.  (ECF No. 34.)

Following remand,[2] Plaintiff filed the Amended Complaint.  (ECF No. 39.)  Defendants

have moved to dismiss the Amended Complaint (ECF No. 42), which Plaintiff has opposed.

---

[2] This case was reassigned to the Undersigned following remand.  (ECF No. 35.)

(ECF No. 48.)[3]  Plaintiff has since filed a Motion for Partial Summary Judgment (ECF No. 44)

and another Motion for Summary Judgment (ECF No. 54).  Defendants have also moved for

summary judgment (ECF No. 46) and have moved to withdraw an exhibit in support of their

request for summary judgment (ECF No. 56.)  These matters are ripe for resolution.

## II.

Plaintiff sets forth free speech and procedural due process claims in his Amended

Complaint.  Plaintiff seeks declaratory and injunctive relief as well as monetary damages.  (Am.

Compl., ¶¶ 34–37.)  Defendants move to dismiss this case and to stay discovery on the grounds

of mootness and failure to state a claim.  (ECF No. 42.)

**A.     Claims for Declaratory and Injunctive Relief**

As a preliminary matter, in arguing that Plaintiff's claims for declaratory and injunctive

relief are moot, Defendants rely on a previously-filed declaration executed by Defendant Jenkins

who avers that the Policy has not been in effect since March 1, 2017.  (*Id*. at 2 (citing Jenkins

Declaration, ECF No. 37-1 (filed in support of an earlier-filed motion to dismiss that was mooted

by the filing of the Amended Complaint)).)  At the motion to dismiss stage, courts generally may

not consider information contained outside of the pleadings.  *See Passa v. City of Columbus*, 123

F. App'x 694, 697 (6th Cir. 2005) (citation omitted) ("[I]n ruling on a motion to dismiss for

failure to state a claim under Rule 12(b)(6), a court generally may not consider any facts outside

the complaint and exhibits attached thereto."); *Ball by Burba v. Kasich*, 244 F. Supp. 3d 662, 670

(S.D. Ohio 2017) ("In ruling on a motion to dismiss, the court may consider written instruments

that are exhibits to a pleading, as those are considered part of the pleading for all purposes.").

However, "'when a document is referred to in the pleadings and is integral to the claims, it *may*

be considered without converting a motion to dismiss into one for summary judgment[.]'" *Doe*

---

[3] Defendants did not file a reply memorandum in support of their Motion to Dismiss.

4

*v. Ohio State Univ.*, 219 F. Supp. 3d 645, 653 (S.D. Ohio 2016) (quoting *Commercial Money*

*Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) (emphasis added)).  Here,

the pleadings do not refer to the Jenkins Declaration and the Undersigned need not consider this

information in addressing the Motion to Dismiss.  *Id.*

However, even if the Undersigned considered the Jenkins Declaration, Defendants'

argument that the termination of the Policy moots the claims for injunctive and declaratory relief

is not well taken.  "'A defendant's voluntary cessation of allegedly unlawful conduct ordinarily

does not suffice to moot a case.'"  *Mokdad v. Sessions*, 876 F.3d 167, 171 (6th Cir. 2017)

(quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174

(2000)).  The United States Supreme Court has explained that the reason for this "is to prevent

underhanded litigation tactics: 'Otherwise, a defendant could engage in unlawful conduct, stop

when sued to have the case declared moot, then pick up where he left off, repeating this cycle

until he achieves all his unlawful ends.'"  *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85,

91 (2013)).  However, an exception to this general rule exists where "a defendant claiming that

its voluntary compliance moots a case bears the formidable burden of showing that it is

absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."

*Already, LLC*, 568 U.S. at 91 (quoting *Friends of the Earth, Inc.*, 528 U.S. at 190); *see also U.S.*

*v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 857 (6th Cir. 2005) (stating that the party asserting

mootness bears a "heavy burden of persua[ding] the court that the challenged conduct cannot

reasonably be expected to stand up again" (internal quotation marks omitted)).  While courts

treat voluntary cessation by government officials with "more solicitude" than such cessation by

private actors, voluntary cessation moots a case "only if subsequent events made it absolutely

clear that the allegedly wrongful behavior could not reasonably be expected to recur[]" and

"interim relief or events have completely and irrevocably eradicated the effects of the alleged

violation." *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003) (internal quotations omitted).

Here, Defendant Jenkins avers that "[d]ue to the number of inmate complaints and the

corresponding need to reduce demands on CCI resources, on March 1, 2017, I rescinded the

February 6, 2015, policy prohibiting orders for printed material placed by third parties through

unapproved vendors" and that "[i]nmates at CCI may now receive publications ordered by a third

party from a publisher or distributor." (Jenkins Declaration, ECF No. 37-1, ¶¶ 5–6.) However,

neither Defendant Jenkins, nor any of the other Defendants, has represented that the Policy will

not be reinstituted or has taken any other actions to show that the Policy is not likely to be

reinstituted after the conclusion of this litigation. Notably, Defendant Jenkins continues to

defend the legality of the Policy, insisting that she implemented it "[i]n an effort to facilitate the

safety and security of the institution and combat the increasing amount of contraband coming

into CCI through the mail[.]" (*Id*. at ¶ 4.) Defendants' subsequent defense of the Policy

undermines any showing that Defendants are unlikely to reinstitute the Policy. *See Knox v. Serv.*

*Emp. Intern. Union, Local 1000*, 567 U.S. 298, 307 (2012) (finding claims were not moot by

voluntary cessation where, *inter alia*, the defendant union "continues to defend the legality of"

its challenged conduct and, therefore, "it is not clear why the union would necessarily refrain

from" the same behavior in the future); *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,

551 U.S. 701, 719 (2007) (finding that voluntary cessation of challenged practice did not moot

case where the defendant "vigorously defends the constitutionality" of the challenged practice

and "clearly [has] not met" its "heavy burden"); *Ammex, Inc.*, 351 F.3d at 705 (stating, *inter alia*,

that voluntary cessation moots a case "only if subsequent events made it absolutely clear that the

allegedly wrongful behavior could not reasonably be expected to recur"). Based on this record,

the Undersigned is not persuaded that Defendants met their "formidable burden of showing that

it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."

*Already, LLC*, 568 U.S. at 91.  Having concluded at this time that Defendants' voluntary

cessation of the Policy does not moot Plaintiff's claims for declaratory and injunctive relief, the

Undersigned expresses no opinion on the validity of Plaintiff's claims if additional evidence is

submitted at the summary judgment stage.

**B.      Claims for Monetary Relief**

Defendants argue that the Court should dismiss Plaintiff's claims for monetary damages.

(ECF No. 42 at 5–6.)  Defendants apparently concede that voluntary cessation of the Policy does

not moot Plaintiff's claims for damages.  (*Id*.)  Instead, Defendants contend that there is no

causal connection between the Policy and Plaintiff's alleged harm because it is his own mother,

not Defendants, who prevented him from ordering the printed materials he wanted.  (*Id*.)

Defendants' argument is not well taken.  The Sixth Circuit implicitly rejected this

argument when it concluded that the Policy did not reasonably relate to a valid penological

interest and that Plaintiff's free speech and procedural due process claims may proceed.  *Bethel

v. Jenkins*, No. 16-4185, 2017 WL 4863118, at *2 (6th Cir. Sept. 22, 2017).

**III.**

Following briefing of Defendants' Motion to Dismiss, the parties went on to file and brief

motions for summary judgment.  Specifically, Plaintiff filed a Motion for Partial Summary

Judgment (ECF No. 44) and later filed a second Motion for Summary Judgment (ECF No. 54).

Defendants have also moved for summary judgment (ECF No. 46) and the parties filed

supporting and opposing memoranda in connection with the summary judgment motions (ECF

Nos. 50, 51, 55, 62).  Defendants have also moved to withdraw an exhibit in support of their

request for summary judgment and to disregard or strike reference to that exhibit in Defendants'

response to summary judgment. (ECF No. 56.) Based on this record, it is unreasonable to

expect the Court to decipher and piece together the parties' arguments and authority for granting

or denying summary judgment scattered throughout multiple filings. Accordingly, as a matter of

case management, it is **RECOMMENDED** that the parties' motions for summary judgment

(ECF Nos. 44, 46, 54) be **DENIED WITHOUT PREJUDICE** to renewal with **TWENTY-**

**ONE (21) DAYS** should the District Judge adopt this recommendation. Any forthcoming

motion for summary judgment, if appropriate, must be properly supported and contain all

arguments without reference to any other filing in this case. Defendants' motion to withdraw an

exhibit (ECF No. 56) is **DENIED AS MOOT**.

Having concluded at this stage that Plaintiff's claims may proceed, Defendants' request

for a stay of discovery pending resolution of their Motion to Dismiss is unwarranted and is

**DENIED**.[4]

### IV.

For all of these reasons, it is **RECOMMENDED** that Defendants' Motion to Dismiss

(ECF No. 42) be **DENIED**. As a matter of case management, it is **FURTHER**

**RECOMMENDED** that the parties' motions for summary judgment (ECF Nos. 44, 46, 54) be

**DENIED WITHOUT PREJUDICE** to renewal with **TWENTY-ONE (21) DAYS** should the

District Judge adopt this recommendation. Defendants' request to stay discovery pending

resolution of their Motion to Dismiss is **DENIED** and Defendants' Motion to Withdraw Exhibit

B (ECF No. 56) is **DENIED AS MOOT**.

---

[4] However, in light of the parties' previous requests for summary judgment, it is unclear based on the present record whether any party believes any discovery is necessary.

## **PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**IT IS SO ORDERED.**

Date: July 2, 2018                                                    /s/ *Elizabeth A. Preston Deavers*
                                                                        ELIZABETH A. PRESTON DEAVERS
                                                                        UNITED STATES MAGISTRATE JUDGE