# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ROBERT W. BETHEL, | : |
|     **Plaintiff,** | :    Case No. 2:15-cv-3016 |
| v. | :    JUDGE ALGENON L. MARBLEY |
| CHARLOTTE A. JENKINS, *et al.*, | :    Magistrate Judge Newman |
|     **Defendants.** | : |

## OPINION & ORDER

This matter comes before the Court on the Magistrate Judge's Report and Recommendation (ECF No. 78) recommending Defendants' Motion for Summary Judgment (ECF No. 68) be granted and Plaintiff's Motion for Summary Judgment (ECF No. 67) be denied. Plaintiff timely objected to these conclusions (ECF No. 81) and Defendants filed a response (ECF No. 83). This Court hereby **ADOPTS** the Report and Recommendation in its entirety based on independent consideration of the analysis herein. Defendants' Motion is **GRANTED**.

## I. BACKGROUND

The facts of this case are enumerated in the Magistrate Judge's Report and Recommendation (ECF No. 78) and are reproduced here, in relevant part. As required on a Motion for Summary Judgment, these facts are recited in the light most favorable to the non-moving party – here, Plaintiff.

Plaintiff, Robert Bethel, is a death row inmate at the Chillicothe Correctional Institution ("CCI") in Chillicothe, Ohio. (ECF No. 39). He alleges that his constitutional rights were violated when four books were withheld from him under a prison policy instituted, and later rescinded, by Defendants. *Id*. Named as Defendants, in their individual and official capacities,

1

are: former CCI Warden Charlotte Jenkins ("Warden Jenkins"); former CCI mailroom supervisor Lieutenant Michael Eiring ("Lt. Eiring"); and current CCI Warden Timothy Shoop ("Warden Shoop"). (ECF No. 39 at 3). As damages, Plaintiff seeks $16.00 of postage for the four books actually withheld from him and $1.00 for each of the 205 books, magazines, and newspapers allegedly unavailable to him as a result of the policy. (ECF No. 39 at 8-9).

Now ripe for adjudication are the parties' cross-Motions for Summary Judgment. The Magistrate Judge has issued a Report and Recommendation, to which Plaintiff has objected. Defendants filed a timely response. This Court now reviews the Report and Recommendations in light of Plaintiff's objections.

## II.    STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Fed R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III.    ANALYSIS

Plaintiff objects to the Magistrate Judge's Report and Recommendation on sixteen itemized grounds, although these objections fall into roughly three categories: errors analyzing the *Turner* factors, errors analyzing Plaintiff's due process claims, and errors analyzing Defendants' qualified immunity status. Plaintiff requests this Court overrule the Magistrate Judge's Report and Recommendation.

## A. *Turner* Factors Objection

Plaintiff first argues the Magistrate Judge incorrectly analyzed the *Turner* factors to conclude that Defendants' Motion for Summary Judgment should be granted. When a prison regulation allegedly infringes on the constitutional rights of those incarcerated, courts evaluate those regulations according to the *Turner* factors. Incarcerated persons have First Amendment rights, but only those "First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Courts thus analyze the restrictions put in place by prison officials "in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Id*.

In *Turner*, the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The logic is that "prison administrators and not the courts are to make the difficult judgment concerning institutional operations." *Id* (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128 (1977) (internal quotation and punctuation omitted). Four factors are relevant to determining the reasonableness of a challenged prison regulation.

> 1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2. there must be alternative means of exercising the right that remain open to prison inmates;
>
> 3. we must consider the impact that accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; and
>
> 4. there must not be alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

(ECF No. 78 at 7) (citing *Turner* at 89-92).

The Magistrate Judge discussed and applied the *Turner* factors in turn. First, the Magistrate concluded that the prison's "publisher only" policy is "neutral and the justification is legitimate both facially and as applied to Plaintiff." (ECF No. 78 at 10). The prison has a legitimate interest in preventing contraband from being introduced into the facility, and Defendants in the instant case presented evidence that contraband was in fact found in items shipped to the prison during the time the prison was implementing a different policy. (ECF No. 78 at 11). Thus the Magistrate concluded that as to the first *Turner* factor, this "undisputed evidence is sufficient to demonstrate a reasonable relationship between the policy and the proffered security interest" and this Court agrees.

The Magistrate Judge considered the second, third, and fourth *Turner* factors together, essentially evaluating whether an available alternative could, at *de minimis* cost to the prison's valid interests, accommodate the prisoner's asserted right. The Magistrate Judge concluded that "sufficient alternate means exist." (ECF No. 78 at 12). Plaintiff is not forbidden from acquiring these books, he is simply restricted from receiving these books in the mail directly from non-approved senders. Plaintiff may use the resources of inter-library loan through the prison library or may use his own funds – or those sent to him by friends and family – to purchase the books directly from the approved senders. In addition, there is a high cost of accommodating Plaintiff in the context of the prison, where prison officials would need to devote resources to screening the mail for contraband and any contraband in the system can have far-reaching consequences. As a result, the Magistrate Judge concluded the *Turner* factors weigh in Defendants' favor. (ECF No. 78 at 14).

These conclusions are not in error. *Turner* requires courts to defer to prison officials where their reasoning is supported by the evidence and reasonable alternative means exist to accommodate the prisoner's rights. As explained by the Magistrate Judge, the policy at issue here is supported by a legitimate penological interest, is applied neutrally, and reasonable alternative means. As to Plaintiff's First Amendment claims, this Court **OVERRULES** his objections and **ADOPTS** the Report and Recommendation.

### B. Due Process Objections

Plaintiff next objects that the Magistrate Judge incorrectly analyzed his due process claims. He argues that Defendants' policy violates his Fourteenth Amendment right to procedural due process.

The Magistrate Judge concluded Plaintiff does not have a protectable interest at law in this case. The Supreme Court has held that property and liberty interests "are not created by the Constitution." (ECF No. 78 at 15) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Rather, the source of the interest to be protected must be from an "*independent source, such a state law*." (ECF No. 78 at 15) (quoting *Roth*, at 577) (emphasis in original). Plaintiff argues that Ohio Rev. Code § 1520.425 and Ohio Admin. Code § 1520-9-19 create a protected right to receive publications that are "non-threatening." (ECF No. 78 at 15). Discussing *Sandin*, and taking into account Plaintiff's incarcerated status, the Magistrate Judge concluded Plaintiff has no protectable property or liberty interest. Assuming, *arguendo*, there *was* an interest to protect, the Magistrate Judge concluded in the alternative that Plaintiff had received sufficient process such that he was not deprived of this property interest in violation of the Constitution.

These conclusions are not in error. Plaintiff received sufficient due process because he had post-deprivation remedies including: written notice, opportunity to avail himself of the prison grievance procedure, and the option to have the book sent back to the third party who sent it. (ECF No. 78 at 17). As a result, as to Plaintiff's Fourteenth Amendment objections, this Court **OVERRULES** the objections and **ADOPTS** the Report and Recommendation.

### C.  Qualified Immunity Objections

Finally, Plaintiff objects to the Magistrate Judge's analysis of Defendants' qualified immunity status. Having done the analysis of the *Turner* factors and of Plaintiff's alleged Fourteenth Amendment interests, the Magistrate Judge concluded "notwithstanding [that] analysis…Defendants are also entitled to qualified immunity in their individual capacities." (ECF No. 78 at 18). Where a government official's conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known," qualified immunity shields that official from liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

 In this instance, Plaintiff has the burden of producing sufficient facts to indicate that Defendants violated his constitutional right and that this right was clearly established. Because the Magistrate Judge concluded that prison officials had not violated Plaintiff's First Amendment or Fourteenth Amendment rights, as alleged, there was no basis to cause Defendants to lose their qualified immunity status under federal law. (ECF No. 78 at 19).

This conclusion was also not in error. Plaintiff cannot point to a clearly established right that was violated by Defendants. In addition to the above analysis, courts have "consistently upheld publisher only policies," (ECF No. 78 at 19) indicating that the "clearly established right" actually cuts against Plaintiff's argument. As to Plaintiff's qualified immunity objections, this Court **OVERRULES** the objections and **ADOPTS** the Report and Recommendation.

## IV. CONCLUSION

Upon *de novo* review, this Court concludes the Magistrate Judge's conclusions were not in error. This Court **OVERRULES** the objections and **ADOPTS IN FULL** the Report and Recommendations.

**IT IS SO ORDERED.**

    <u>s/ Algenon L. Marbley</u>
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: Tuesday, March 26, 2019**